## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CALVIN TATUM,<br>　　*Plaintiff*,<br><br><br>　　　v.<br><br><br>UNIVERSITY OF HARTFORD,<br>　　*Defendant.* | Case No. 3:19-cv-01546 (KAD)<br><br><br><br><br><br>September 16, 2021 |

## MEMORANDUM OF DECISION RE:
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 32)

Kari A. Dooley, United States District Judge:

This action arises out of the termination of Plaintiff Calvin Tatum ("Tatum" or the "Plaintiff") from his employment as a custodial shift supervisor with the Defendant, the University of Hartford (the "University" or the "Defendant"). The Plaintiff alleges age discrimination and retaliation against the University under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60 *et seq.* Pending before the Court is the University's motion for summary judgment on all claims, which the Plaintiff opposes. The Court has considered the parties' memoranda and exhibits and held oral argument on August 24, 2021. For the reasons that follow, the motion for summary judgment is DENIED.

**Relevant Facts**

The following facts are taken from the Defendant's Local Rule 56(a)1 Statement of Material Facts ("Def.'s LRS," ECF No. 32-2), the Plaintiff's response thereto and Statement of Additional Material Facts ("Pl.'s Resp.," ECF No. 37) and the parties' exhibits. The facts set forth by the Defendant are admitted by Plaintiff unless otherwise indicated.

Tatum, who is currently 78 years old (*see* Tatum Aff. ¶ 1, Pl.'s Ex. J, ECF No. 37-10), was hired by the University to work as a custodian in its Facilities Department beginning on March 27, 2006.  (Def.'s LRS ¶ 2.)  He was promoted to First Shift Supervisor on May 23, 2010.  (*Id.*)  Keith Fernandez ("Fernandez"), the University's Assistant Director of Facilities, became Plaintiff's supervisor in late 2014.  (*Id.* ¶ 3.)  Tatum received positive performance evaluations from Fernandez in early 2014 and early 2015—including a "Fully Satisfactory" rating in the 2015 review.  (*Id.* ¶ 4.)

On November 17, 2015, Fernandez issued Tatum a written warning in which he asserted that Tatum had failed to take corrective action in the face of an employee's abuse of the University's attendance policy—thus failing to fulfill his obligations as the employee's supervisor.  (*See* Ex. B-3 to Conley, Decl., ECF No. 32-4.)  The written warning further represented that the disciplinary letter that Tatum later drafted to the employee upon Fernandez's instruction failed to address the employee's time management problems adequately and minimized or made excuses for the employee's recurring tardiness.  (*See id.*)  The Plaintiff disputes the truth and the good-faith basis of Fernandez's allegations.  (*See* Pl.'s Resp. ¶ 5.)  He testified that the employee was permitted pursuant to his union contract to use personal time at the beginning or end of the workday—for instance, by logging in at 7:10 a.m. for a 7:00 a.m. start and using ten minutes of personal time—but that Fernandez disagreed with Tatum's interpretation of the union rules.  (Tatum Dep. Tr. at 52:2–22, Pl.'s Ex. A, ECF No. 37-1.)  Tatum filed a grievance objecting to the warning and as a result the University removed it from his personnel file.  (Def.'s LRS ¶ 6.)

Fernandez rated Tatum's performance only as "Satisfactory" in his April 2016 review.  (*Id.* ¶ 7.)  In addition to citing the written warning, which had been removed from Plaintiff's file, the review also stated that the Plaintiff "has been personally addressed for displaying aggressive

behaviors towards both staff and venders of the University" and that the Plaintiff continued to struggle with the time keeping system. (Ex. B-6 to Conley Decl.) Tatum again disputes the veracity of these representations. (*See* Tatum Aff. ¶ 5.) On December 15, 2016, Fernandez issued Tatum a documented verbal warning in which he questioned Tatum's ability to satisfy the obligations of his position based in part on the condition of the Lincoln Theatre before the University's fall commencement ceremony. (Def's. LRS ¶ 8; Ex. B-7 to Conley Decl.) The warning also cited in bullet-form Fernandez's concerns with a number of areas of Tatum's work— including daily building inspections, ability to respond to the University's changing needs, management of staff, quality and proper work completion, and communications with employees and supervisor. (Ex. B-7.) Tatum again challenges the good-faith basis for Fernandez's allegations; he testified that there was no problem with the condition of the Lincoln Theatre and that Fernandez made claims about finding things like papers and chewing gum on the backs of chairs that were not true. (Tatum Dep. Tr. at 58:16–25.) The Plaintiff further testified that he always conducted building inspections on a daily basis, that Fernandez had never expressed concerns regarding Tatum's responsiveness to the University's changing needs, and that the other bulleted items were fabricated in order to support Fernandez's issuance of an unfavorable annual review. (*Id.* at 61:13–25, 62:3–13, 63:2–8.)

The review that Fernandez issued in early 2017 ranked Tatum as not meeting expectations. (Def.'s LRS ¶¶ 9–10; Ex. B-8 to Conley Decl.) In areas of improvement Fernandez indicated, *inter alia*, that Tatum needed to better address behavioral issues with his staff and hold employees accountable and that he should spend more time inspecting buildings assigned to him; the review cited the December 2016 warning and repeated Fernandez's allegation that certain buildings assigned to the Plaintiff were found in subpar condition around commencement time. (*Id.*) The

review also indicated that the Plaintiff needed to become more supportive of his supervisor and staff, spend more time learning and executing University policies, take better initiative in the areas of planning and problem solving, and complete paperwork during an eight-hour workday. (Ex. B-8.) Tatum refused to sign the review because he did not believe it accurately memorialized his performance. (*Id.*; Tatum Dep. Tr. at 65:9–15.) He testified that Fernandez's concerns about Tatum's support of his staff were disingenuous, that Tatum did support Fernandez, that he always completed paperwork during the workday, and that he took initiative in all of the areas that Fernandez identified as deficient. (*Id.* at 66:6–25, 67:1–4.) Tatum further testified that despite his disagreement with the review, he always followed Fernandez's instructions and attempted to take corrective actions. (*Id.* at 67:7–17.)

Fernandez next provided the Plaintiff with a written warning letter dated November 21, 2017. (Def.'s LRS ¶ 12; Ex. B-9 to Conley Decl.) The letter charges the Plaintiff with neglecting to address staff misconduct appropriately, including by drafting poorly written discipline documents, twisting facts on behalf of employees, and acting more as a union representative than a supervisor. (Ex. B-9.) It provides four examples of incidents highlighting the Plaintiff's failure to execute properly his supervisory responsibilities: (1) Tatum engaged in a shouting match with an employee, Gileon Jack, indoors while classes were in session, and the Plaintiff needed to call Public Safety to get Ms. Jack to comply with his directives—an event which ultimately led to the rescission of Jack's discipline due to the way Tatum handled the issue; (2) the Plaintiff deliberately misinformed another employee, Ann Leon, about a training issue, resulting in Ms. Leon refusing to comply with the Plaintiff's directives and in her suspension for the day; (3) Tatum subsequently failed to direct Leon to sign her discipline letter despite being instructed to do so at a supervisor's meeting; and (4) the Plaintiff failed to address the failure of employee Rhona Foster to show up

for an overtime shift and made excuses on her behalf when Fernandez directed the Plaintiff to raise the issue.  (*Id.*)  Tatum refused to sign this discipline letter.  He avers that during a meeting with Fernandez that same day, Fernandez stated that Tatum "should not be working at the University of Hartford because I was already 'collecting two paychecks' because I receive Social Security benefits." (Tatum Aff. ¶ 6.)  He further represents that while Fernandez reprimanded Tatum during this meeting for his inadequate performance as a custodial supervisor, he did not discuss any issues concerning the above-mentioned employees.  (*Id.*)

With respect to these cited incidents Tatum testified that he never neglected to address staff members' infractions and that Fernandez never raised these issues with him before delivering the warning.  (Tatum Dep. Tr. at 70:3–17.)  Tatum denied getting into a shouting match with Ms. Jack and testified that he sent her home for refusing work and that Fernandez issued the warning because Tatum did not obtain Fernandez's permission before doing so when Fernandez was not on campus. (*Id.* at 71:23–25, 72:2–10.)  Tatum further testified that Fernandez had directed him to train Ann Leon on a side-by-side machine but that she refused to be trained and Tatum therefore sent her home; Tatum was unaware of what "misinformation" the discipline letter referred to.  (*Id.* at 73:1–16.)  When Ms. Leon refused to sign the discipline letter, Tatum testified that because she was a union employee he understood that the issue would need to be resolved through the union.  (*Id.* at 74:10–15.)  As for Rhona Foster, the Plaintiff testified that Ms. Foster was assigned overtime twice in the same weekend, which resulted in the weekend supervisor needing to find someone to cover one of the placements.  (*See id.* at 76:4–19.)  Tatum refused to sign Foster's discipline form and testified that he was not Ms. Foster's supervisor for purposes of this incident.  (*See id.* at 76:20–25, 77:1–2.)

Tatum submitted a grievance on December 22, 2017 in which he objected to the November 2017 written warning.  (Def.'s LRS ¶ 13; Ex. B-10 to Conley Decl.)  In an attachment to the grievance, Tatum emphasized his belief that Fernandez was targeting him because of his age.  (Def.'s LRS ¶¶ 14–15.)  In his deposition Tatum testified that Fernandez told him several times that he was too old to work for the University—including in staff and union meetings and meetings at which all custodial supervisors were present.  (Tatum Dep. Tr. at 25:6–25, 26:8–9, 27:11–25, 28:1–10.)  Tatum also testified that he believed Fernandez wanted to replace him with a younger employee, Kerry Vega, who was in his 40's.  (*Id.* at 28:17–19, 29:3.)  According to Tatum, Fernandez stated his belief many times at these meetings that anyone receiving social security benefits should not be working at the University—which Tatum took to mean anyone over aged 65.  (*See id.* at 29:6–25, 30:1–25.)  In a follow-up email to his grievance Tatum also asserted that Fernandez had stated, "If you worked for any other place other[sic] than the University of Hartford you would have been fired a long time ago."  (Def.'s LRS ¶ 16; Ex. B-11 to Conley Decl.)  In his deposition Tatum clarified this statement by responding in the affirmative when asked whether Fernandez "actually said that you'd have been fired because of your age a long time ago, or words to that effect?"  (Tatum Dep. Tr. at 82:13–16.)

On February 18, 2018, John Michalewicz ("Michalewicz"), the University's Senior Director of Facilities, denied Tatum's step two grievance on the grounds that the written discipline issued to the Plaintiff was appropriate in the circumstances.  (Def.'s LRS ¶ 17; Ex. B-12 to Conley Decl.)  Upon reviewing all of the documentation and meeting with the Plaintiff, Michalewicz concluded that the events highlighted in Fernandez's discipline letter did occur. (Ex. B-12.)  He found that "in each of these incidents Mr. Tatum['s] actions are not in line with established levels of acceptable conduct," and that ultimately because of his actions "required work was not

completed, and added costs to the University were incurred in both operating dollars and reputation." (*Id.*) Tatum sought to appeal Michalewicz's decision but on March 2, 2018, Jamie Harlow ("Harlow"), the University's director of Human Resources, delivered a memorandum to the Plaintiff in which she explained that the Plaintiff's appeal was untimely. (Def.'s LRS ¶ 18; Ex. B-13 to Conley Decl.) The memorandum stated, however, that "[t]he University takes such allegations seriously and, in accordance with University policy, a full review of these allegations will be conducted." (Ex. B-13.) The University then retained attorney Christopher Brigham ("Brigham") to conduct an investigation. (Def.'s LRS ¶ 19.)

On March 27, 2018, Fernandez issued another annual performance review in which he identified Tatum as not meeting expectations. (Ex. B-14 to Conley Decl.[1]) The review indicated that Plaintiff could show improvement by conducting himself more professionally, putting aside his personal dislikes, opinions, and feelings, exhibiting more cooperation with his supervisor, following University timekeeping policy, holding his staff accountable, and studying the University's employment manual and union contract. (*Id.*) It also noted that Tatum's conduct during several grievance meetings has "been documented as insubordinate, aggressive and offensive" and it had "become a normal practice for Mr. Tatum to have loud and aggressive out bursts, as well as his launching personal attacks." (*Id.*) Tatum refused to sign the evaluation. (*Id.*)

Tatum filed a charge of age discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on April 11, 2018. (Def.'s LRS ¶ 20.) Approximately two weeks later, on April 27, 2018, Fernandez issued Tatum a "Final Written Warning." (*Id.* ¶ 24; Ex. B-16 to Conley Decl.) Therein, Fernandez noted that he and Tatum had spoken on numerous

---

[1] This performance evaluation is not included in the Defendant's LRS, but the Defendant does cite to it in its discussion of the Plaintiff's retaliation claim. (*See* Def.'s Mem. at 20.) The Court, having reviewed the summary judgment record independently, has included the details regarding this evaluation here for the sake of completeness.

occasions over the past several months regarding Fernandez's concerns with Tatum's job performance, including as part of the recent annual performance review. (Ex. B-16*.*) Fernandez stated that he continued to harbor concerns regarding Tatum's performance despite these discussions, noting that during a supervisor's meeting on April 18, Tatum raised his voice and became argumentative while Fernandez was explaining a new directive. According to Fernandez, Tatum was ultimately sent home for the remainder of the workday when his "actions continued to be aggressive and loud." (*Id.*) The written warning put the Plaintiff on notice that his "continued lack of cooperation, collaboration and teamwork" violated the University policies pertaining to civility, employee relations, and general expectations, citing the applicable policy provisions, and warned that "[a]ny violation of University or departmental policies and/or failure to immediately address these concerns and improve overall job performance will result in termination of employment." (*Id.*) Tatum disputes these allegations and testified that Fernandez accused him of misconduct during the April 18 meeting in order to facilitate his being sent home and ultimately to effect his termination. (Tatum Dep. Tr. at 104:8–13.) He further testified that the problems Fernandez identified were not real and therefore "there was no corrective action that I knew I could do." (*Id.* at 108:19–25.) During a meeting that same day in which Fernandez provided Tatum the final written warning and Tatum protested his discipline, Tatum represents that "Fernandez again said that it wasn't right that I was collecting 'two paychecks.'" (Tatum Aff. ¶ 7.)

According to the Defendant, shift supervisor David Nowell ("Nowell") submitted an incident report in which he stated that on April 19, 2018 at approximately 6:45 a.m., "Calvin became very angry and started to scream at me" in response to a question Nowell asked regarding another employee's vacation schedule. (Ex. B-21 to Conley Decl.) The incident report further stated that during this encounter Tatum "became very violent and charged towards me," leading

Nowell to think "for a moment that he was going to take a swing at me." (*Id.*)  The Plaintiff objects to this evidence as inadmissible hearsay on the grounds that the incident report is not signed and there is no factual predicate for identifying it as a business record.  Tatum also testified that he does not recall the incident described in the report and that he never screamed at or charged toward Nowell.  (Tatum Dep. Tr. at 97:15–25, 98:1–11.)

On June 26, 2018, Attorney Brigham completed his investigation and issued a confidential report.  (Def.'s LRS ¶ 26.)  Brigham interviewed nine witnesses, including the Plaintiff, and ultimately concluded that the Plaintiff's claims of age discrimination could not be corroborated. (*See* Ex. B-20 to Conley Decl. at 1, 12.)  Tatum claims that Brigham's investigation was incomplete as he failed to interview all employees and retired employees identified by Tatum— who, according to Tatum, were also subject to Fernandez's age-related discriminatory comments and/or witnessed some of the comments Fernandez had made to Tatum.  (Pl.'s Resp. ¶ 26; Tatum Aff. ¶ 8.)  On July 10, 2018, Tatum sent an email to HR director Harlow in which he accused Fernandez of conspiring with other employees to "set up" Tatum.  (Def.'s LRS ¶ 29; Ex. B-17 to Conley Decl.)  The Plaintiff characterizes the "set up" as part of Fernandez's effort to terminate the Plaintiff because of his age and his exercise of protected activity.  (*See* Pl.'s Resp. ¶ 29.)

On July 5, 2018, the Plaintiff authorized three hours of overtime pay for two employees, Alex Perez and Genara Gil-Plascencia.  (Def.'s LRS ¶ 30.)  The Defendant claims that this violated University policy, which Tatum disputes.  According to Tatum, Fernandez gave him an "emergency" directive around 3:00 p.m. on July 5 to clean a certain unit on campus before the students moved in that same evening.  (Tatum Dep. Tr. at 111:14–21.)  Because his employees clock out at 3:30 each day, Tatum testified that he needed to place emergency calls to the employees who ended up performing the work and that per their union contracts the employees

were entitled to four hours of compensation for an emergency call.  (*Id.* at 111:22–25, 112:1–11.)

Tatum testified that he did not know how long the employees actually worked but that he

authorized three hours of compensation due to the emergency.  (*Id*. at 112:12–14, 113:1–13; *see*

*also* Tatum Aff. ¶ 10.)  He further testified that Fernandez later informed Tatum that he was in the

parking lot when the employees left and that they only worked one hour; Fernandez therefore

accused Tatum of falsifying timesheets despite having earlier approved the timesheets for three

hours of overtime following the incident.  (Tatum Dep. Tr. at 113:18–23, 114:10–25, 115:1–4.)

On July 27, 2018, Fernandez sent Plaintiff a termination letter in which he stated that

Tatum's conduct in connection with the July 5, 2018 incident violated the University policies

pertaining to hours, overtime and pay practices, and general expectations.  (Ex. B-18 to Conley

Decl.)  The termination letter also cited Fernandez's prior documented concerns with Tatum's

performance and his failure to address these issues.  (*Id.*)  The letter thus provided "formal notice

that due to continuing concerns with your overall job performance, you are being relieved of your

duties at the University of Hartford effective immediately."  (*Id.*)  The parties do not dispute that

it was Fernandez's decision to terminate the Plaintiff.  (Def.'s LRS ¶ 32.)  On July 30, 2018, the

Plaintiff amended his CHRO complaint to allege that his termination was motivated by retaliation

for his protected activity in opposing the University's discriminatory practices and for filing his

original administrative complaint.  (Pl.'s Ex. I, ECF No. 37-9.)

As noted previously the Plaintiff maintains that Fernandez "regularly made age-biased

comments to me in the workplace," including by commenting on his collecting social security

benefits and alluding to his "forgetfulness or senility."[2]  (Tatum Aff. ¶ 4; *see also, e.g.*, Tatum

---

[2] In his deposition Tatum provided examples of a number of employees who he believed would corroborate
Fernandez's discriminatory conduct.  For example, Taum testified that now-retired employees Lebert Wade, Hermin
Henriques, and Dorrell Carter were also subject to discriminatory comments made by Fernandez in regard to their age

Dep. Tr. at 83:20–23, 84:13–22.). Tatum also testified that Fernandez brought up Tatum's CHRO complaint more than once in their conversations and expressed displeasure with Tatum for having filed a complaint against him.  (Tatum Dep. Tr. at 43:3–22.)  He avers that during the April 27, 2018 meeting in which Fernandez issued Tatum the Final Written Warning, Fernandez told Tatum "that he 'didn't care who I complained to' he wasn't going to change anything he had written in the Final Written Warning."  (Tatum Aff. ¶ 7.)

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact is one that 'might affect the outcome of the suit under the governing law' and as to which 'a reasonable jury could return a verdict for the nonmoving party.'"  *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.  Accordingly, the moving party

---

and that Fernandez made comments to each of them suggesting that Tatum should retire.  (Tatum Dep. Tr. at 31:17–25.)  Tatum further testified that Fernandez told Gileon Jack "that she should retire because of her age" (*id.* at 36:9–10), that custodial operator Mario Reyes stated that "Fernandez was forcing him out because of his age" (*id.* at 39:13–14), and that Fernandez indicated to employees Alex Perez and Gifford Miller that Tatum was too old to be their supervisor.  (*Id.* at 37:6–8; 38:13–15.)  The record contains no direct testimony or affidavits/declarations from any of these individuals.  Tatum acknowledges that these statements are not admissible for the truth of the matter but argues that they are admissible to demonstrate Tatum's good-faith belief that his age was a motivating factor in Fernandez's adverse employment decisions.  (*See* Pl.'s Mem. at 4 n.3.)  The University argues that this evidence is all inadmissible hearsay but as the University also notes in its reply brief, Tatum does not appear to rely upon any of it in his opposition.  (*See* Reply at 3 n.4.)  The Court therefore does not consider such evidence in assessing the presence or absence of a genuine issue of material fact.

satisfies its burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (quotation marks and citations omitted).  Once the movant meets its burden, "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)).  "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish a disputed fact.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  The standard thus requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249.

In assessing the presence or absence of a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (*per curiam*) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party."  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

The Defendant has moved for summary judgment with respect to the Plaintiff's claims of age discrimination and retaliation under the ADEA and the CFEPA.  These are addressed in turn.

*Age Discrimination*

"Under the ADEA, it is 'unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age [or] to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age[.]'" *Mendillo v. Prudential Ins. Co. of Am.*, 156 F. Supp. 3d 317, 337 (D. Conn. 2016) (quoting 29 U.S.C. § 623(a)).  Similarly, the CFEPA provides that "[i]t shall be a discriminatory practice in violation of this section" for an employer "to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . age[.]" Conn. Gen. Stat. § 46a-60(b)(1).  "[T]he Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFEPA." *Weichman v. Chubb & Son*, 552 F. Supp. 2d 271, 282 (D. Conn. 2008) (quoting *Farrar v. Town of Stratford*, 537 F. Supp. 2d 332, 348 (D. Conn. 2008)); *see also, e.g.*, *Patino v. Birken Mfg. Co.*, 304 Conn. 679, 689, 41 A.3d 1013 (2012) ("Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws.") (quoting *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 407, 944 A.2d 925 (2008)).

"In the Second Circuit, ADEA discrimination claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as modified by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)." *Mendillo*, 156 F. Supp. 3d at 337–38.

> Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Once this burden is met, the defendant must then articulate 'some legitimate, nondiscriminatory reason' for its action.  The defendant need not persuade the court that it was actually motivated by the proffered reason.  It is sufficient if

the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.   When the employer meets its burden, the plaintiff can no longer rely on the prima facie case, but must prove that the employer's proffered reason was a pretext for discrimination[.] Since the Supreme Court's decision in *Gross* . . . , eliminating the mixed-motive analysis as to ADEA claims, a plaintiff bringing a disparate-treatment claim pursuant to the ADEA satisfies this burden by presenting facts, which taken in his favor, suffice to show that a triable issue exists as to whether his age was a 'but for' cause of his termination.

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (internal citations, quotation marks, ellipsis, and alterations omitted).[3]

In order to set forth a *prima facie* case of age discrimination, Tatum "must show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Mendillo*, 156 F. Supp. 3d at 338 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)).  The Plaintiff's burden at this stage is "de minimis." *Id.* And here, the parties do not dispute that Tatum is in the protected age group, that he was qualified for the position of custodial shift supervisor, and that he experienced adverse employment action in the form of his termination.  The University does assert, however, that there is insufficient evidence that the termination occurred under circumstances giving rise to an inference of discrimination.  The Court disagrees.  The evidence of Fernandez's negative comments regarding the Plaintiff's receipt of social security benefits while working and other

---

[3] As the Plaintiff notes, the Connecticut Supreme Court has not addressed whether the "but-for" causation standard articulated by the Supreme Court in *Gross* also applies to age discrimination claims under CFEPA. *See, e.g.*, *Vale v. City of New Haven*, 197 F. Supp. 3d 389, 397–400 (D. Conn. 2016) (providing comprehensive overview of the split among courts both within this District and in the Superior Court on this issue without ultimately deciding whether to apply the more lenient "mixed motive" standard that derives from Title VII or the ADEA's more stringent "but-for" causation requirement).  The Court assumes that the "but-for" standard applies, as the difference is not dispositive.

alleged comments pertaining to Tatum's age is sufficient to meet the Plaintiff's minimal burden at this stage.[4]

As to the next inquiry in the *McDonnell Douglas* framework, the parties also do not dispute that the University has satisfied its burden of proffering legitimate, non-discriminatory reasons for firing Tatum in light of its documented history of disciplinary warnings and negative performance reviews.   The only question remaining, therefore, is whether Tatum has presented sufficient evidence from which a jury could conclude that the University's stated reasons for his termination were pretextual.

As discussed above, the inquiry for the Court at this stage is "whether 'the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find. . . that age was the 'but-for' cause of the challenged adverse employment action.'"   *Delaney*, 766 F.3d at 168–69 (quoting *Gorzynski*, 596 F.3d at 106) (internal quotation marks omitted).   Here, the Defendant argues that the only evidence of alleged age-related discrimination takes the form of Fernandez's "stray remarks," which were too attenuated from the termination decision to permit the reasonable inference that the Defendant's reasons for firing Tatum were pretextual.   The Second Circuit has instructed that "when considering whether isolated 'stray remarks' are probative of discriminatory intent," district courts should consider that "[t]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination," whereas "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that

---

[4] "The separate stages of a plaintiff's demonstration of a prima facie inference of discrimination and pretext 'tend to collapse as a practical matter under the *McDonnell Douglas* framework.'"   *Gomez v. Metro. Dist.*, 10 F. Supp. 3d 224, 242 (D. Conn. 2014) (quoting *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 n.1 (2d Cir. 2002)).   Therefore courts will sometimes skip directly to the question of pretext, provided the employer has set forth a legitimate, nondiscriminatory reason for the challenged employment action.   *See, e.g.*, *Genova v. Cty. of Nassau*, No. CV-17-4959 (SJF) (AYS), 2019 WL 8407451, at *6 (E.D.N.Y. Dec. 26, 2019), *report and recommendation adopted*, 2020 WL 813160 (E.D.N.Y. Feb. 19, 2020), *aff'd*, 851 F. App'x 241 (2d Cir. 2021).

remark will be." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (quotation marks and citation omitted). "In determining whether a remark is probative," courts should therefore assess: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Id.*; *see also, e.g.*, *Rajaravivarma v. Bd. of Trustees for Connecticut State Univ. Sys.*, 862 F. Supp. 2d 127, 152 (D. Conn. 2012) (applying same factors). However, the Second Circuit has also explained that "remarks are not 'stray' where they are sufficiently repetitive and severe so as to prove sufficient evidence of discriminatory intent." *Naumovski v. Norris*, 934 F.3d 200, 216 n.47 (2d Cir. 2019).

In *Naumovski*, which the Defendant cites, the plaintiff was purportedly terminated from her position as assistant basketball coach at Binghamton University on the basis of her favoritism toward certain student athletes and conflicts with a supervisor. *See id.* at 209. The Second Circuit held that another supervisor's statement that the plaintiff's "problem is that you're a single female in your mid-30s," which could have been interpreted as suggesting that the plaintiff was in a sexual relationship with a same-sex student, was a stray mark insufficient to infer a discriminatory animus toward women or a subset of women in particular. *Id.* at 215–16.[5] The Defendant contrasts *Naumovski* with *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116–17 (2d Cir. 2007), cited

---

[5] The plaintiff's claims against the public university in *Naumovski* were brought under the Equal Protection Clause pursuant to 42 U.S.C. § 1983 as opposed to Title VII and so the causation standard that the Second Circuit applied was tantamount to the more stringent standard which courts apply under the ADEA. *See* 934 F.3d at 217 (explaining that because the claims were brought under Section 1983, "Naumovski must therefore establish not only that Defendants' sex stereotyping biases played *some* role in the decision to terminate her, but that this stereotyping was a 'but-for' cause of that decision. . . In other words, Naumovski must establish that a reasonable jury could find that Defendants would not have terminated her based on their stated reasons alone"); *accord Gross*, 557 U.S. at 177–78 (holding that ADEA "plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision").

by the Plaintiff, where the Second Circuit held that a plaintiff could prevail on her discrimination claim on the basis of evidence that included the plaintiff's supervisor making age-related comments to plaintiff approximately once a month, including at her firing.[6]  The Defendant argues that unlike the plaintiff in *Tomassi*, Tatum here has not established a link between Fernandez's age-related comments and his termination.  Again, the Court disagrees.

This is not a case where the decisionmaker is charged with having made isolated discriminatory comments.  To the contrary, Tatum testified to a history of being subjected to negative comments about his collecting social security benefits and to being repeatedly targeted by Fernandez for receiving "two paychecks," including during meetings to discuss his job performance.  For example, Tatum claims that during the November 21, 2017 meeting held in connection with Tatum's disciplinary letter, Fernandez told Tatum that if he "worked somewhere else other than University of Hartford I would have been fired long ago because of my age" and that Tatum "should not be working at the University of Hartford because I was already 'collecting two paychecks' because I receive Social Security benefits."  (Tatum Aff. ¶ 6; *see also* Tatum Dep. Tr. at 82:8–16[7].)  Similarly, during the April 27, 2018 meeting in which Tatum was provided the final written warning, he states that "Fernandez again said that it wasn't right that I was collecting 'two paychecks.'"  (Tatum Aff. ¶ 7.)  And Tatum otherwise testified that Fernandez told him "several times" that he was "too old to work at the University of Hartford," including during staff and union meetings.  (*E.g.*, Tatum Dep. Tr. at 25:8–17, 27:23–25, 28:1–2.)

---

[6] *Tomassi* has been abrogated by *Gross* to the extent that it applied the more lenient mixed-motive standard.  *See* 478 F.3d. at 114 ("[T]he question in adjudicating the defendants' motion for summary judgment becomes simply whether the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that her dismissal was motivated at least in part by age discrimination").

[7] According to Tatum's affidavit, Fernandez made these remarks during a meeting on November 21, 2017.  (Tatum Aff. ¶ 6.)  In his deposition, however, Tatum appeared to attribute Fernandez's remarks to a meeting held on January 16, 2018 to discuss Tatum's grievance of the November 2017 disciplinary letter.  (*See* Tatum Dep. Tr. at 80:1–7.)  In either case, however, Tatum represents that Fernandez's remarks were rendered in connection with the November 2017 discipline.

Applying the relevant factors, it is apparent that the alleged "stray remarks:" 1) were made by the direct decision-maker with respect to Tatum's termination—*i.e.*, Fernandez; 2) were rendered during the disciplinary events leading up to Tatum's termination, even if not made at the time of Tatum's actual termination; 3) could be viewed as discriminatory given the Plaintiff's testimony that the remarks directly targeted the Plaintiff's age; and 4) could be perceived as "related" to the decision-making process, especially considering Tatum's assertions that Fernandez stated that he would have been fired due to his age had he worked for a different employer. *Wyeth Pharms.*, 616 F.3d at 149. The University's argument that these remarks are too attenuated and disconnected from the decision to fire Tatum is unpersuasive. If credited, the remarks in fact suggest that Fernandez believed Tatum was unqualified to work for the University due to his age.

In addition, further establishing a genuine issue of material fact on the question of pretext is Tatum's testimony that the events described in Fernandez's disciplinary reports and negative performance evaluations were false and/or fabricated. The University argues that Tatum cannot rely on his own disagreement with Fernandez's critique of his performance and interpretation of University or union policy to create an issue of fact regarding pretext, citing, *inter alia*, *Timbie v. Eli Lilly & Co.*, No. 3:08-CV-00979 (PCD), 2010 WL 9067050 (D. Conn. July 14, 2010), *aff'd*, 429 F. App'x 20 (2d Cir. 2011). *Timbie* involved an age discrimination claim brought against a company that had cited the plaintiff's failure to meet performance quotas and her history of negative performance evaluations in proffering a legitimate, non-discriminatory reason for denying her salary increases and full bonuses. *See id*. at *10. Applying the pre-*Gross* standard, the district court held that the plaintiff's belief that she had met the defendant's sales quotas when the parties disagreed as to the proper metric was insufficient to establish that these stated reasons

were pretextual.  *See id.* at *12.  The plaintiff also conceded that she could not "remember the circumstances surrounding her field evaluations," and the district court accordingly found that she could not "raise a genuine issue of material fact regarding the critiques offered in those evaluations."  *Id*. at *10.  Here, by contrast, Tatum has denied, under oath, all of the misconduct with which he was charged—the sole evidence of which, again, was furnished by Fernandez, the same decisionmaker to whom the alleged discriminatory animus is attributed.  This includes Tatum's testimony that his authorization of overtime compensation for two employees leading to his ultimate termination was consistent with the operative Collective Bargaining Agreement between the employees' union and the University.

The Court therefore concludes that it is for the jury to decide whether to credit Tatum's version of events over that of Fernandez.  As the Second Circuit has explained:

> In discrimination cases, the only direct evidence available very often centers on what the defendant allegedly said or did. Since the defendant will rarely admit to having said or done what is alleged, and since third-party witnesses are by no means always available, the issue frequently becomes one of assessing the credibility of the parties.
>
> At summary judgment, however, that issue is necessarily resolved in favor of the nonmovant.

*Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 80 (2d Cir. 2016) (citation omitted).[8] Defendant's motion for summary judgment as to the age discrimination claims is denied.

### Retaliation

"Under the ADEA, it is unlawful for an employer to retaliate against an employee for complaining of age discrimination in the workplace."  *Thomas v. Town of Se.*, 336 F. Supp. 3d

---

[8] While the Defendant argues that even if Tatum's interpretation of the collective bargaining agreement, which is attached as Plaintiff's Exhibit D to Tatum's opposition (ECF No. 37-4) is correct, the "evidence does not establish that the reason Fernandez gave for the Termination is so obviously dishonest that the very fact that he supplied that reason shows that his real motive for the Termination was Plaintiff's age."  (Def.'s Reply at 4.)  Again, the question of whether Fernandez's cited reasons for the termination reflect an honest misinterpretation of the CBA or instead reveal pretext for unlawful discrimination is a question for the jury.

317, 326 (S.D.N.Y. 2018) (citing 29 U.S.C. § 623(d)).  "To establish a prima facie case of retaliation under the ADEA, 'a plaintiff must show (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Mendillo*, 156 F. Supp. 3d at 340 (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012).  The Plaintiff bears the same burden under the CFEPA.  *Phadnis v. Great Expression Dental Centers of Connecticut P.C.*, 170 Conn. App. 79, 94–95, 153 A.3d 687 (App. Ct. 2017) (citing federal precedent in analyzing the plaintiff's retaliation claims) "Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Mendillo*, 156 F. Supp. 3d. at 340–41 (quoting *Hicks*, 593 F.3d at 170).  "If the plaintiff establishes a prima facie case for … retaliation, the burden shifts to the defendant to articulate 'a legitimate, nondiscriminatory reason' for the adverse employment action. If the defendant sustains that burden, the plaintiff must show that the proffered justification is pretextual."  *Meyer v. Shulkin*, 722 F. App'x 26, 28 (2d Cir. 2018) (summary order) (citing *Bucalo*, 691 F.3d at 132) (internal citation omitted).  As with age discrimination claims, "ADEA retaliation claims likewise require 'proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'"  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021) (quoting *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).[9]

---

[9] Again, "it remains unsettled whether causation under the CFEPA is analyzed using the 'but-for' or 'motivating factor' standard," but "[t]he Court need not weigh in on the debate here [because] Plaintiff survives summary judgment under the stricter 'but-for' standard for [ADEA] retaliation."  *Byrne v. Yale Univ., Inc.*, 450 F. Supp. 3d 105, 123 (D. Conn. 2020).

The University argues that Plaintiff cannot make out a *prima facie* case of retaliation at step one of the burden-shifting framework or pretext at step three. The University asserts that there is insufficient evidence of a causal connection between Tatum's filing of the CHRO charge on April 11, 2018 and any adverse employment action and, similarly, that there is a dearth of evidence suggesting that the University's reasons for firing Tatum were pretext for unlawful retaliation. On this issue, it is undisputed that Fernandez was the only University employee whose conduct led the Plaintiff to believe that his termination was retaliatory. (*See* Tatum Dep. Tr. at 44:13–17.) And it is also undisputed that the first two written warnings from December 2016 and November 2017, as well as the negative performance evaluations from early 2017 and 2018, were issued by Fernandez before Tatum filed the CHRO complaint. The Defendant therefore argues that since Fernandez's criticisms of the Plaintiff before Tatum's filing of the CHRO complaint are consistent with his criticisms of the Plaintiff following the filing, there is no reasonable inference of a causal connection between the two. However it was not until after the University learned of the filing of the CHRO complaint, which was no later than May 9, 2018 (*see* Def.'s Ex. C, ECF No. 32-6), that the University took the step of terminating Tatum on July 27, 2018.

On this issue the Defendant further argues that Tatum may not rely upon the approximately three and a half months that elapsed between the filing of Tatum's CHRO complaint and his termination as circumstantial evidence of retaliation, as "temporal proximity alone is not enough to establish pretext in this Circuit." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014); *see also, e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage.").[10]

---

[10] As this Court has previously observed,"[c]ourts in this Circuit have often found that a temporal gap of approximately three months between the protected activity and the adverse action, without more, prohibits an inference of causation." *Grande v. Hartford Bd. of Educ.*, No. 3:19-CV-00184 (KAD), 2021 WL 231134, at *8 (D. Conn. Jan. 21, 2021)

However Tatum does not rely on mere temporal proximity, as he has also presented direct evidence of a retaliatory motive.  As noted above Tatum testified that Fernandez stated that "he didn't appreciate that I filed a complaint against him," (Tatum Dep. Tr. at 43:7–8) and that he spoke of the CHRO complaint with Tatum "more than once" and "[e]specially when it was time for reviews." (*Id.* at 43:15–16.)  These comments constitute sufficient direct evidence from which a jury might find retaliatory purpose and pretext at the first and third stages of the burden-shifting framework. *Compare, e.g.*, *Augustus v. AHRC Nassau*, No. 11-CV-15 (MKB), 2012 WL 6138484, at *10 (E.D.N.Y. Dec. 11, 2012) (finding sufficient evidence of retaliatory intent in case brought under Family Medical Leave Act where "in addition to the temporal proximity between Plaintiff's protected activity and Defendant's challenged actions, Plaintiff has presented evidence that supervisors made negative comments and expressed frustration with her advocacy on behalf of [a pregnant colleague's] rights."); *with Lomotey v. Connecticut Dep't of Transp.*, No. 3:05-CV-1711 (PCD), 2009 WL 82501, at *10 (D. Conn. Jan. 12, 2009), *aff'd*, 355 F. App'x 478 (2d Cir. 2009) (finding absence of causal connection between protected activity and adverse employment action where "Plaintiff offers no direct evidence, such as negative comments by supervisors about his CHRO testimony, that his non-promotion was attributable to retaliatory animus").  Thus, whether or not Tatum can establish a *prima facie* case of retaliation and, assuming he can, whether he can establish that he would not have been terminated but for that retaliatory animus, are questions for the jury to decide.

---

(quoting *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 299 (S.D.N.Y. 2014)).  On this issue, Tatum also asserts that he engaged in additional protected activity by filing a rebuttal to the Defendant's answer to his CHRO complaint on July 13, 2018.  (*See* Pl.'s Ex. H, ECF No. 37-8.)  The Court need not address whether the temporal proximity between the termination and the filing of the rebuttal defeats the defendant's motion for summary judgment given its conclusion that Tatum has identified direct evidence of retaliation.

**Conclusion**

For the foregoing reasons, the Court concludes that the record reflects genuine issues of material fact that warrant a trial on the Plaintiff's claims of age discrimination and retaliation under the ADEA and the CFEPA.  Defendant's motion for summary judgment is accordingly denied.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of September 2021.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE